██ ANTHONY J. DEANGELIS et al., Respondents, v TIMBERPEG EAST, INC., et al., Appellants. [858 NYS2d 410]—

Peters, J.P. Appeal from an order of the Supreme Court (Giardino, J.), entered April 26, 2007 in Hamilton County, which, among other things, partially denied defendants' motions to dismiss the complaint.

Prompted by advertisements in a regional paper for "Timber Frame Homes" by defendants Timberpeg East, Inc., Timberpeg Services, Inc. and T-Peg, Inc. (hereinafter collectively referred to as Timberpeg), plaintiffs attended various Timberpeg open houses. After being advised by Timberpeg personnel that defendant John S. Shafer was an authorized Timberpeg representative serving the area in which plaintiffs sought to construct a home, they attended his open house and met John S. Shafer and defendant John H. Shafer. According to plaintiffs, both the Shafers and a Timberpeg manager held the Shafers out as authorized representatives of Timberpeg and assured plaintiffs that they were experienced and specially trained builders of Timberpeg homes. Plaintiffs were also led to believe that Timberpeg would be involved in all aspects of the design and construction of the home and that the Shafers would be acting under Timberpeg's supervision.

Based upon these representations, plaintiffs signed a "Timberpeg Package" order form which contained a limited warranty stating that Timberpeg was merely a supplier of design plans and building materials and did not guarantee the work of the Shafers. Yet, according to plaintiffs, even after signing the order form Timberpeg assured them that it would "conduct normal on site visits, remain involved with the construction of the house, and make sure [it] was properly constructed." Thereafter, plaintiffs entered into a contract with the Shafers for the construction of the home. Soon after construction began in September 2003, plaintiffs became dissatisfied with the work and complained to Timberpeg about the Shafers' poor workmanship, defective work product and failure to meet contractual deadlines. Following months of little progress, plaintiffs terminated their contract with the Shafers on February 25,

2005 and hired a different contractor to complete the construction.

Plaintiffs subsequently commenced the instant action against Timberpeg and the Shafers. The Shafers' preanswer motion to dismiss pursuant to CPLR 3211 (a) and (c) was opposed by plaintiffs, who cross-moved for partial summary judgment on the issue of the Shafers' personal liability. Thereafter, Timberpeg filed a cross motion to dismiss. Supreme Court partially granted defendants' motions to dismiss and denied plaintiffs' cross motion for partial summary judgment. Defendants now appeal.

Initially, we disagree with defendants' assertion that Supreme Court should have converted their motions to dismiss into motions for summary judgment because plaintiffs "deliberately chart[ed]" such a procedural course by cross-moving for summary judgment (*Four Seasons Hotels v Vinnik*, 127 AD2d 310, 320 [1987]). Plaintiffs' cross motion for summary judgment was limited to the narrow issue of the Shafers' personal liability. Moreover, the issues raised in defendants' motions to dismiss were ones of fact, rather than law (*cf. Historic Albany Found. v Breslin*, 282 AD2d 981, 983 [2001], *lv dismissed* 97 NY2d 636 [2001]). In addition, in an affidavit opposing defendants' motions, plaintiffs' counsel clearly argued that summary judgment treatment of the remaining issues was premature and that discovery was necessary to offer sufficient evidentiary proof as to the substance of their various claims (*see Lockheed Martin Corp. v Aatlas Commerce, Inc.*, 283 AD2d 801, 803 [2001]; *Henbest & Morrisey v W.H. Ins. Agency*, 259 AD2d 829, 830 [1999]; *Four Seasons Hotels v Vinnik*, 127 AD2d at 321). As such, Supreme Court properly declined to treat defendants' motions, except that portion of the Shafers' motion which sought dismissal of plaintiffs' claims on the basis of personal liability, as motions for summary judgment.

Substantively, defendants assert that Supreme Court erred in denying their motions to dismiss plaintiffs' causes of action for deceptive practices, false advertising and fraud. On such motion to dismiss pursuant to CPLR 3211 (a) (7), we "must afford the pleadings a liberal construction, take the allegations of the complaint as true and provide [the] plaintiff the benefit of every possible inference" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]; *see Team Mktg. USA Corp. v Power Pact, LLC*, 41 AD3d 939, 940 [2007]). Additionally, we may "freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint" because the ultimate " 'criterion is whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one' " (*Leon v Martinez*, 84

NY2d 83, 88 [1994], quoting *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]; *accord Juric v Bergstraesser*, 44 AD3d 1186, 1187 [2007]).

As to plaintiffs' claims against defendants under the General Business Law, to state a cause of action for deceptive practices, plaintiffs were required to allege that defendants engaged in consumer-oriented acts or practices that are "deceptive or misleading in a material way and that plaintiff has been injured by reason thereof" (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25 [1995]; *see* General Business Law § 349; *Stutman v Chemical Bank*, 95 NY2d 24, 29 [2000]; *Baron v Pfizer, Inc.*, 42 AD3d 627, 628 [2007]). Similarly, a cause of action for false advertising pursuant to General Business Law § 350 is stated so long as plaintiffs allege that "the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury" (*Andre Strishak & Assoc. v Hewlett Packard Co.*, 300 AD2d 608, 609 [2002]; *see DeSantis v Sears, Roebuck & Co.*, 148 AD2d 36, 38 [1989]). The test is, under both statutes, whether the representations or omissions are "likely to mislead a reasonable consumer acting reasonably under the circumstances" (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d at 26).

The allegations of plaintiffs' complaint, taken as true, as well as the assertions contained in the supporting affidavits in opposition to defendants' motions, satisfy the elements of each cause of action. Specifically, the complaint alleges that Timberpeg engaged in consumer-oriented acts by representing itself, through an advertisement disseminated to the public in a regional magazine, flyers and open houses, as the purveyor of a "package" of products and services necessary to provide a completed Timberpeg home. The advertisement lists "John Shafer"—without distinguishing between the Shafers—as a servicer of Timberpeg's product and contains his contact information.* The complaint and supporting affidavits further allege that the Shafers and Timberpeg's manager represented to both plaintiffs and the public at large that the Shafers were trained, experienced and competent representatives of Timberpeg who, under Timberpeg's continuing supervision, could reproduce a Timberpeg home of the quality shown in the advertisement and at the open houses. The aforementioned conduct is alleged to be false and misleading in that Timberpeg was responsible for only the building supplies for Timberpeg homes, the Shafers did not

---

* Significantly, the record is devoid of evidence as to which defendant funded the advertisement.

work on Timberpeg's behalf, the Shafers were not competent builders and plaintiffs did not receive a Timberpeg home of the quality that was represented to them.

We reject Timberpeg's argument that plaintiffs could not have been deceived or misled because the contract they signed contained a merger clause and specifically disclaimed liability for the performance of the representative who assembles the home, as these clauses are "not determinative of plaintiffs' [General Business Law §] 349 claims, which are based on deceptive business *practices*, not on deceptive contracts" (*Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 345 [1999]). Moreover, the standard to be applied to determine whether an advertisement or consumer-oriented act is misleading "is not whether it is deceptive to the hypothetical reasonable person, but to 'the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions' " (*DeSantis v Sears, Roebuck & Co.*, 148 AD2d at 38, quoting *Guggenheimer v Ginzburg*, 43 NY2d at 273). Thus, assuming the truth of plaintiffs' allegations and affording them every favorable inference, plaintiffs have stated viable causes of action under General Business Law §§ 349 and 350 against defendants.

We agree, however, with defendants' contention that plaintiffs have failed to state a cause of action for common-law fraud against them. "To make out a prima facie case of fraud, the complaint must contain allegations of a representation of material fact, falsity, scienter, reliance and injury" (*Small v Lorillard Tobacco Co.*, 94 NY2d 43, 57 [1999] [citation omitted]; *see Wilsen Assoc. Real Estate Corp. v Pizilly*, 204 AD2d 777, 778 [1994]). Plaintiffs' allegations regarding this cause of action essentially mirror those made in connection with their General Business Law claims. However, the "Timberpeg Package" order form signed by plaintiffs cautions that "no agency relationship, express or implied, shall exist between [Timberpeg] and Independent Representative to make [Timberpeg] liable for Independent Representative's performance," and contains a merger clause as well as other limiting language. These provisions, although insufficient to defeat plaintiffs' General Business Law §§ 349 and 350 claims, negate plaintiffs' claim of fraudulent inducement since there cannot be any justifiable reliance (*see Citibank v Plapinger*, 66 NY2d 90, 94-95 [1985]; *Hewlett v Staff*, 235 AD2d 696, 697 [1997]; *Lewin Chevrolet-Geo-Oldsmobile v Bender*, 225 AD2d 916, 918 [1996]).

Having found that plaintiffs have stated a cause of action for deceptive practices and false advertising, we next address the

Shafers' contention that they cannot be held personally liable as to these claims inasmuch as the statements and representations which constitute the basis of this action were all made in their capacity as officers of Authentic Adirondack Homes, LLC, rather than in their individual capacities. In support of their motion to dismiss, the Shafers submitted a copy of a business card bearing the name "Authentic Adirondack Homes, LLC" and averred that a similar card was given to plaintiffs at the outset of their dealings at the open house. However, the supplemental affidavit of plaintiff Anthony J. DeAngelis flatly denies receiving such a business card and asserts that plaintiffs did not learn that "Authentic Adirondack Homes" was a limited liability company—or that the Shafers were agents thereof—until after the construction contract was terminated. Thus, plaintiffs raised a question of fact as to whether the Shafers disclosed their status as agents of Authentic Adirondack Homes, LLC sufficient to withstand summary judgment on the issue of personal liability as to these causes of action (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

With respect to plaintiffs' breach of contract claims, we agree with Supreme Court that issues of fact exist precluding summary judgment on the issue of the personal liability with respect to John S. Shafer, but not as to John H. Shafer. It is well settled that an individual who signs a contract as an agent for an entity will be held personally liable on the contract if the agency relationship is not disclosed (*see McClure v Central Trust Co. of N.Y.*, 165 NY 108, 128 [1900]; *New England Mar. Contrs. v Martin*, 156 AD2d 804, 805 [1989]; *Tarolli Lbr. Co. v Andreassi*, 59 AD2d 1011, 1011-1012 [1977]; *see also* Restatement [Third] of Agency § 6.03). In his affidavit, John S. Shafer states that while he signed the subject construction contract with plaintiffs, he did so in his capacity as chief operating officer of Authentic Adirondack Homes, LLC and that plaintiffs were aware of his status as an agent of such company. However, the construction contract at issue denominates the contractor as "Authentic Adirondack homes" and the owner as "Tony DeAngelis," and lists "John Shafer" as the person who solicited and/or negotiated the contract. Further, the contract is signed by "John Shafer" without denoting any corporate or representative status. Moreover, there is no reference in the contract to the status of Authentic Adirondack Homes as a limited liability company (*see* Limited Liability Company Law § 204 [a]) or to John S. Shafer's status as an officer or representative of this company. Indeed, the parties executed numerous amendments to the construction contract, each of which bore the letterhead of "Authentic Adirondack Homes" and was signed by John S.

Shafer, again without revealing any agency or representative status. Accordingly, Supreme Court properly sustained the breach of contract claims as against John S. Shafer.

Defendants' remaining contentions, including the Shafers' argument that plaintiffs' claims under the Lien Law are barred by the applicable statute of limitations, have been reviewed and found to be without merit.

Carpinello, Kane, Malone Jr. and Stein, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendants' motions to dismiss the common-law fraud cause of action; motions granted to that extent and said cause of action dismissed; and, as so modified, affirmed.