OPINION OF THE COURT
Thomas A. Dickerson, J.
Givers Gain
The plaintiff, BNI New York Ltd., doing business as Business Network Int’l. (BNI-NY), is a franchisee of California-based Business Network International (BNI) and is owned by BNI “Executive Director” J. Lance Mead (Mead). BNI is a business and professional networking organization with a simple philosophy: “Word of mouth is the most cost-effective form of advertising possible. BNI provides a structured environment for the development and exchange of quality business referrals * ** * Success in BNI means you need to be a positive and supportive member of an organization based upon mutual support. This requires commitment to your fellow members as well as to the philosophy of ‘Givers Gain’: by giving business to others, you will get business in return”. (Plaintiff’s exhibit 3.)
The BNI Structure
Each BNI Chapter limits its members to “only one person from each profession”, i.e., one lawyer, one florist, etc. Members *11 attend one 90-minute meeting each week and “are required to bring bona-fide referrals and/or visitors”. Members must attend meetings (“There are no leaves of absence except for medical leaves”) and comply with a Code of Ethics (“2. I will be truthful with the members and their referrals”). The “BNI [Meeting] Agenda” requires member presentations and the introduction of referrals who along with new and old members are instructed to “Pass [their] business cards to the left”.
Franchising The Obvious
The essence of BNI is that it encourages its members to do the obvious, i.e., to recommend each other to consumers wanting to purchase various goods or services. BNI’s “service” is marketed through franchises, e.g., BNI-NY, as a replacement for or supplement to advertising in newspapers and other media. BNI’s “New Member Policies” (plaintiff’s exhibit 3) states that “By comparison, getting referrals through a one day 4” X 4” display ad costs an average for $1,568.00 * * * Based on a survey conducted by Dr. Ivan R. Misner [the founder of BNI], each member of BNI passes an average of over $15,660 worth of potential business to other members in one year’s time”.
Incredible Promises
The “New Members Policies” refers the reader to BNI’s California headquarters and its Internet Web Page (www.bni.com) wherein it is stated that BNI has “910 [Chapters] worldwide as of 1/15/1998 and growing”, its membership is “18,000 and growing”, its number of referrals in 1997 was “762,000” and the “Total Value of Leads: $265,000,000 [1996]”.
Nonrefundable Fees
At BNI the obvious costs money and, what’s more, the fees are nonrefundable. To join BNI prospective members must complete an application form and pay a registration fee of $50 and semi-annual dues of $125 or annual dues of $210. BNI’s “New Member Policies” informs prospective members that “fees are non-refundable” (plaintiff’s exhibit 3). BNI’s application form states “Upon Your Acceptance To BNI, Fees Non-Refundable Without Exception” (plaintiff’s exhibits 1, 2, 7).
Returned Check Policy
BNI’s “New Member Policies” also informs prospective members that it “has a strict policy on returned checks * * * *12 All returned checks will be assessed a minimum $20 returned check fee” (plaintiffs exhibit 3).
Cyber Solutions Wants To Join
The defendant, David J. DeSanto (DeSanto), a resident of Larchmont, New York, doing business as Cyber Solutions, relied upon BNI’s representations and decided to join BNI’s Manhattan #1 Chapter, one of several franchises owned by Mead. DeSanto completed a BNI application, paid a $50 registration fee and a semi-annual dues payment of $125 for a total of $175.
Mead Promises Acceptance In BNI
DeSanto’s $175 check was returned for insufficient funds and resulted in a $10 “handling fee” being imposed against BNI-NY’s account. Mead phoned DeSanto and learned that because the BNI Manhattan #1 Chapter was not convenient he had decided to cancel his BNI application. Mead offered to find a more convenient BNI Chapter, one located closer to his home in Larchmont. Mead promised DeSanto that he would be accepted into the BNI Eastchester Chapter upon his submission of a new application form and the execution of an installment note for $185. DeSanto relied upon Mead’s promise, completed a new application form, signed an installment note for $185 and made his first payment of $30.
The Lawsuit And Counterclaims
The Membership Committee of the BNI Eastchester Chapter rejected DeSanto’s application. DeSanto stopped paying on the installment note and demanded the return of his initial $30 payment. According to DeSanto, Mead threatened to ruin him if he didn’t continue paying on the installment note notwithstanding his rejection by the BNI Eastchester Chapter. Mead then brought this lawsuit against DeSanto seeking damages for “bounced check * * * promised to pay and signed promissory note * * * made one payment and stopped”. DeSanto filed a counterclaim seeking damages on a variety of grounds including “misrepresentation [and] fraud”.
DISCUSSION
Based upon the foregoing, the court finds that the plaintiff’s claim, with the exception of seeking reimbursement for a $10 “handling fee”, is without merit. On the other hand, the defendant has stated cognizable causes of action for (1) rescission of *13 the plaintiffs installment note on several grounds including (a) want of consideration, (b) failure of consideration, (c) unconscionability and (d) misrepresentation, and (2) violation of General Business Law § 349 (deceptive and misleading business practices).
The Installment Note Is Rescinded
Although plaintiffs installment note begins with the language “For Value Received”, plainly there was none since defendant was never accepted into BNI’s Eastchester Chapter. Whether viewed as a want of consideration or a failure of consideration, it is clear that defendant received nothing of value from the plaintiff (see, Rossi v 21st Century Concepts, 162 Misc 2d 932 [1994] [misrepresented pots and pans]).
The plaintiff induced the defendant to sign the installment note by promising that he would be accepted into BNI’s Eastchester Chapter. That promise was false and the transaction which induced defendant to sign the installment note was unconscionable (see, e.g., Hertz Corp. v Attorney-General of State of N. Y., 136 Misc 2d 420, 424 [1987] [unconscionable bargain defined: “The concept has been employed primarily in the area of consumer protection, in an attempt to deal with the ‘ “never-ending stream of consumer gypsters and fraudulent operators”’”]; People v Two Wheel Corp., 71 NY2d 693 [1988] [doctrine of unconscionability]; Kugler v Romain, 58 NJ 522, 544, 279 A2d 640, 652 [1971] [“unconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation * * * and the like”]).
No Refund Policy Is A Penalty
Plaintiff asserts that defendant must pay the $50 registration fee and $125 semi-annual dues since they are part of the application process and are nonrefundable. To the extent plaintiff relies upon language in BNI’s “New Member Policies” (“fees are non-refundable”) and on BNI’s application form (“Upon Acceptance To BNI, Fees Are Non-Refundable Without Exception”) such reliance is misplaced. Even assuming defendant had been “accepted” by BNI, these clauses are unenforceable because they are penalties. The plaintiff has failed to establish that a 100% cancellation fee, if indeed there was a cancellation, is in any way related to the actual damages sustained. Plainly, the purpose of these clauses is to intimidate and frighten consumers into foregoing their right to withdraw from a worthless transaction and accept services which they do *14 not need (see, e.g., Truck Rent-A-Ctr. v Puritan Farms 2nd, 41 NY2d 420, 424 [1977] [“A clause which provides for an amount plainly disproportionate to real damage is not intended to provide fair compensation but to secure performance by the compulsion of the very disproportion”]; Nu Dimensions Figure Salons v Becerra, 73 Misc 2d 140, 143 [Civ Ct, Queens County 1973] [weight-reducing salon seeks to enforce overreaching contract: “This type of contract clause which demands full payment of the contract price even when no services are performed and no loss proven is unconscionable and will not be enforced”]; Educational Beneficial v Reynolds, 67 Misc 2d 739 [Civ Ct, NY County 1971] [educational contract allowing school to retain fixed nonrefundable enrollment fee of $600 plus $7 per hour for all scheduled but unused classes unconscionable]; Filpo v Credit Express Furniture, NYLJ, Aug. 26, 1997, at 26, col 4 [Yonkers City Ct] [20% cancellation fee void as penalty]; Walker v Winks Furniture, 168 Misc 2d 265 [1996] [20% cancellation fee unconscionable]).
Returned Check Clause Enforced
The plaintiff seeks reimbursement of the $10 “handling fee” assessed against him when defendant’s check was returned for insufficient funds. This claim is based upon another clause which appears in BNI’s “New Member Policies” (“All returned checks will be assessed a minimum $20 returned check fee”). This clause is enforceable to the extent that plaintiff has submitted credible evidence that his actual damages were $10. The plaintiff’s claim for monies in excess of $10, i.e., $10 additional, is denied since it is a penalty and unenforceable for the reasons previously discussed.
Violation Of General Business Law § 349
General Business Law § 349 is a broad, remedial statute (see, e.g., Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20 [1995]; see also, Note, New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor, 48 Brook L Rev 509 [1982]) directed towards giving consumers a powerful remedy. The elements of a violation of General Business Law § 349 are (1) proof that the practice was deceptive or misleading in a material respect and (2) proof that plaintiff was injured (see, Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 349, at 565; McDonald v North Shore Yacht Sales, 134 Misc 2d 910 [1987]; Geismar v Abraham & Straus, *15 109 Misc 2d 495 [1981]). There is no requirement under General Business Law § 349 that plaintiff prove that defendant’s practices and acts were intentional, fraudulent or even reckless. Nor does plaintiff have to prove reliance upon defendant’s deceptive practices.
The plaintiff has violated General Business Law § 349 in the following respects:
First, the plaintiff’s misrepresentation that defendant would be accepted by BNFs Eastchester Chapter, and which induced defendant to execute the installment note, was false, deceptive and misleading (see, C.T.V., Inc. v Curlen, NYJL, Dec. 3, 1997, at 35, col 1 [Yonkers City Ct] [misrepresentations are deceptive and misleading]).
Second, the plaintiff’s use of “fees are non-refundable” and “Fees Are Non-Befundable Without Exception” clauses, which are penalties, in advertising brochures and on application forms was deceptive and misleading (see, Filpo v Credit Express Furniture, supra [failure to inform consumer of statutory rescission rights is misleading]; Matter of State of New York v ITM, Inc., 52 Misc 2d 39 [1966] [failure to reveal consumer’s probability of earnings from chain letter constitutes fraud]; Matter of Lefkowitz v E. F. G. Baby Prods. Co., 40 AD2d 364 [1973] [failure to give required notice illegal act]).
Third, the plaintiff’s refusal to return defendant’s initial payment of $30 notwithstanding his rejection for membership in BNFs Eastchester Chapter was deceptive and misleading.
The defendant’s misleading and deceptive practices in marketing its services to the general public “have a broad impact on consumers at large” (New York Univ. v Continental Ins. Co., 87 NY2d 308, 320 [1995]).
DAMAGES
First, the defendant is awarded actual damages of $30 representing his initial payment on plaintiffs rescinded installment note.
Second, and in the alternative, the defendant is awarded statutory damages of $50 pursuant to General Business Law § 349 (h) (“an action to recover his actual damages or fifty dollars, whichever is greater”; see, Geismar v Abraham & Straus, 109 Misc 2d 495 [1981], supra).
Third, the defendant’s damages of $50 are reduced by $10, the “handling fee” assessed against the plaintiff.